[Cite as *State v. Brooks*, 2020-Ohio-4123.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

    Plaintiff-Appellee

-vs-

LADASIA BROOKS

    Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2019 CA 0104

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2018 CR 0832 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 18, 2020 |

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
PROSECUTING ATTORNEY
JOSEPH C. SNYDER
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

WILLIAM T. CRAMER
470 Olde Worthington Road
Suite 200
Westerville, Ohio 43082

*Wise, J.*

{¶1}   Appellant Ladasia Brooks appeals her convictions and sentences entered by the Richland County Court of Common Pleas, following a jury trial.

{¶2}   Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶3}   On September 20, 2018, Appellant Ladasia Brooks was indicted with a six-count indictment: Count One: Aggravated Burglary, a felony of the first-degree, in violation of R.C. §2925.11(A)(1); Count Two: Burglary, a felony of the second-degree, in violation of R.C. §2911.12(A)(1); Count Three: Possession of Criminal Tools, a felony of the fifth-degree, in violation of R.C. §2923.24(A); Count Four: Assault, a misdemeanor of the first degree, in violation of R.C. §2903.13(A); Count Five: Domestic Violence, a misdemeanor of the first degree, in violation of R.C. §2919.25(A); Count Six: Criminal Damaging, a misdemeanor of the second-degree, in violation of R.C. §2909.06(A)(1).

{¶4}   On October 7, 2019, Appellant proceeded to jury trial.

{¶5}   At trial, the State presented the following testimony and evidence.

{¶6}   Daniel Myers testified he and Appellant have a five-year-old child together. (T. at 250-251). Mr. Myers broke off his relationship with Appellant in May of 2018. (T. at 250-253). Up until June 5, 2018, the last contact that Mr. Myers had with Appellant was to talk about a birthday party for their daughter several weeks prior to the incident. (T. at 256).

{¶7}   On June 5, 2018, the day before their daughter's birthday, Mr. Myers was living at his mother's house at 232 Bartley Avenue in Mansfield, Ohio. (T. at 257). Mr. Myers' mother, Alicia Randolph, had locked the door when she left for work that morning.

*(T.* at 421). Mr. Myers was sleeping in bed with his girlfriend Stephanie Price when he woke up to find Appellant Ladasia Brooks standing in his bedroom. *(T.* at 261). Appellant then began attacking Ms. Price by striking her in the head and pulling her hair. *(T.* at 261, 263, 353, 355, 452).

**{¶8}** Jackie Randolph, Mr. Myers' stepfather, testified that he heard yelling and went to Mr. Myers' room with a baseball bat for protection. *(T.* at 394). Mr. Myers and Mr. Randolph attempted to get Appellant off of Ms. Price. *(T.* at 261, 264). Appellant then began attacking Mr. Myers and bit his ear, causing it to bleed. *(T.* at 261, 277-278, 362). Once Mr. Randolph got Appellant off of Mr. Myers, she fled. *Id.* As Appellant fled, she grabbed Mr. Myers' wallet and stole $70. (T. at 265). Mr. Randolph was able to take a picture of Appellant as she fled down the stairs. *(T.* at 266-267). Mr. Myers testified that no one had given Appellant permission to be in the home on June 5, 2019. *(T.* at 253-255, 261-262).

**{¶9}** After Appellant fled the house, Mr. Myers went downstairs and locked the door for fear that she might return. (T. at 269). Mr. Randolph was able to take two pictures of Appellant as she came back to his house shortly after she fled. (T. at 273). These pictures show Appellant holding the $70 that she had just stolen from Mr. Myers' wallet. Appellant came back to the door and punched the window in the door, breaking it. (T. at 274). After Appellant left the second time, Ms. Price went to the convenience store where her friend, Amy Picheco, worked and told her what happened. Ms. Picheco then called police. (T. at 277, 358).

**{¶10}** A year prior to the incident, Mr. Myers' mother, Alicia Randolph, who owns the house, told Appellant that she was no longer welcome in the house after she punched

holes in the wall. (T. at 416). Also, in the previous year, Appellant attacked Mr. Myers at his job with mace. (T. at 455-456). Approximately three months prior to the June 5 incident, Mrs. Randolph caught Appellant in her home and again told her she was not welcome and to never return. (T. at 417). Approximately two weeks prior to the incident, Appellant entered the residence and stole Mr. Myers' dog. (T. at 390). Mr. Randolph called Appellant and told her to return the dog. *Id.* When she returned, Mr. Randolph confronted Appellant for taking his dog. (T. at 39)1. Appellant then produced a can of mace and told him to come out to the street. *Id.* Since the dog was back in his house and Appellant had brought her daughter with her, Mr. Randolph went back into is home. *Id.* Appellant threatened Mrs. Randolph and said that she would come to the house anytime she wanted. (T. at 418).

{¶11} On June 5, 2018, Mr. Myers was seen by a physician, Dr. Revill, and was treated for a human bite wound to his left ear. (T. at 238, 245). Mr. Myers told Dr. Revill that the injury came from being bitten by Appellant. (T. at 245). To treat the injury, Mr. Myers was given a tetanus shot and prescribed the antibiotic Augmentin. (T. at 238-239).

{¶12} Ms. Price did not have health insurance so she did not seek medical attention. (T. at 356- 357). Ms. Price' head hurt for two weeks, preventing her from taking showers. (T. at 357). Ms. Price took Advil for the pain, but it did not help. (T. at 367-368). After the incident, Ms. Price felt afraid to be around Mr. Myers for fear that Appellant would attack her again, so she ended their relationship. (T. at 369).

{¶13} Subsequent to the burglary, Appellant told Mr. Myers that she was pregnant with a second child by him. *Id.* Because of this, Mr. Myers gave Appellant's father $1,000 to help bond her out of jail. (T. at 339). After the baby was born, Mr. Myers got a paternity

test through the Child Support Agency, and it came back negative as to him being the father. (T. at 339-340).

{¶14}  Mr. Myers confronted Appellant regarding this in January of 2019 and she confessed that the child was not his. (T. at 340). Mr. Myers stated that had it not been for this claim that this new child was his, he would not have had further contact with Appellant. (T. at 341).

{¶15}  Amy Picheco testified that on October 8, 2019, the second day of trial, Appellant came to her place of employment over the lunch break and spoke to her. (T. at 458-462, 466). Appellant told Ms. Picheco that she was going to court and was nervous. *Id.* Appellant told her that she could plead the fifth and tried to convince Ms. Picheco not to testify. (T. at 458-459, 471-472).

{¶16}  Appellant testified at trial and claimed that on May 28, 2018, Mr. Myers had threatened to shoot her, and she filed a police report. (T. at 530-531). Appellant admitted to entering Mr. Myers' house through a door, but claimed that she had Mr. Myers' permission to be there. (T. at 500-501). Appellant also admitted to getting into a "tussle" with Mr. Myers and stated that she only bit him after he bit her on the arm first and that he had her pinned down on the bed by her wrists when she bit him. (T. at 505-506).

{¶17}  Appellant testified that Myers' step-dad then came in to the room and hit her in the left knee with a baseball bat. (T. at 507-508). Appellant further testified that she and Ms. Price then got into a physical altercation.  (T. at 508-509).

{¶18}  Appellant stated that she accidently broke the window on the door when she was banging on it because she had left her sandal in the house. (T. at 511).

{¶19}  During trial, the State dismissed Count Three.

**{¶20}** On October 11, 2019, Appellant was found guilty of the remaining counts. The trial court sentenced Appellant to seven (7) years in prison on the aggravated burglary. The court also imposed concurrent terms of seven (7) years for the burglary, six (6) months for the assault, six (6) months for domestic violence, and ninety (90) days for criminal damaging, for a combined total of seven (7) years in prison. Appellant was also given seven days of jail credit and ordered to pay $7 in restitution.

**{¶21}** Appellant now appeals, raising the following errors for review:

### ASSIGNMENTS OF ERROR

**{¶22}** "I. APPELLANT WAS DEPRIVED OF A FAIR TRIAL WHEN THE TRIAL COURT ERRONEOUSLY REQUIRED APPELLANT TO BEAR THE BURDEN OF PROVING SELF-DEFENSE.

**{¶23}** "II. APPELLANT WAS DEPRIVED OF HER CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HER WHEN THE TRIAL COURT REFUSED TO ALLOW HER TO IMPEACH A WITNESS WITH JAIL TELEPHONE CALLS THAT WERE NOT PROVIDED TO THE STATE IN DISCOVERY.

**{¶24}** "III. APPELLANT WAS DEPRIVED OF HER CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST HER WHEN THE TRIAL COURT REFUSED TO ALLOW HER TO IMPEACH A WITNESS WITH A PRIOR GUILTY PLEA FOR DRUG TRAFFICKING.

**{¶25}** "IV. APPELLANT WAS DEPRIVED OF HER DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED EXTENSIVE EVIDENCE OF OTHER ACTS IN VIOLATION OF EVID.R. 404(B).

**{¶26}** "V. APPELLANT WAS DEPRIVED OF HER STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO TIMELY OBJECT TO IMPROPER CHARACTER EVIDENCE

**{¶27}** "VI. APPELLANT WAS DEPRIVED OF HER CONSTITUTIONAL RIGHTS TO A FAIR TRIAL BY THE ADMISSION OF EVIDENCE OF HER CONTACT WITH A PROSECUTION WITNESS DURING TRIAL IN VIOLATION OF EVID.R. 403.

**{¶28}** "VII. APPELLANT WAS DEPRIVED OF HER CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE."

## I.

**{¶29}** In her first assignment of error, Appellant claims the trial court improperly required her to prove self-defense. We disagree.

**{¶30}** In support of her argument, Appellant cites the new version of R.C. §2901.05 which does not shift to a defendant the burden of proving self-defense. Now, it is the State's burden to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. §2901.05(B)(1). The new version took effect on March 28, 2019, after the date of Appellant's offense which was June 5, 2018.

**{¶31}** Appellant argues that because the new version of R.C. §2901.05 went into effect prior to her trial, which took place in October, 2019, the new version of the law should have been applied in this case.

**{¶32}** "A statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. §1.48. *See Van Fossen v. Babcock Wilcox Co.,* 36 Ohio St.3d

100, 105, 522 N.E.2d 489 (1988). Additionally, Section 28, Article II of the Ohio Constitution, prohibits the General Assembly from passing retroactive laws. Applying these two provisions, the Supreme Court of Ohio has established a two-part test to determine whether a statute may be applied retroactively. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10.

**{¶33}** Under this test, a court must first determine as a threshold matter whether the General Assembly expressly intended the statute to apply retroactively. *State v. Hubbard*, 12th Dist. Butler, 2020-Ohio-856, 146 N.E.3d 593, ¶ 22. If not, the statute may not be applied retroactively. *Id.* However, if the General Assembly expressly indicated its intention that the statute apply retroactively, a court must move to the second step of the analysis and "determine whether the statute is remedial, in which case retroactive application is permitted, or substantive, in which case retroactive application is forbidden." *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 27.

**{¶34}** The statutory amendment at issue states:

(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence as described in division (B)(1) of this section, is upon the accused.

\* \* \*

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶35} R.C. §2901.05 (Effective March 28, 2019).

{¶36} Here, the trial court found that the H.B. 228 amendment applied only to offenses committed after the effective date of the amendment.

{¶37} Upon review, we find that the statute does not state, and the legislature has not indicated, expressly or otherwise, that H.B. 228 is to be retroactively applied.

{¶38} This Court has previously found the burden-shifting changes the General Assembly made to Ohio's self-defense statute through the passage of H.B. 228 did not apply in circumstances where the offense(s) occurred prior to the effective date of that statute, March 28, 2019. *State v. Whitman*, 5th Dist. Stark No. 2019CA00094, 2019-Ohio-4140, 2019 WL 4942414, ¶11 ("[c]hanges to R.C. 2901.05, effective March 28, 2019, do not apply retroactively to appellant's case" and, therefore, "[t]he statute as amended does not provide for retroactive application"); *State v. Moore*, 5th Dist. Muskingum No. CT2019-0030, 2020-Ohio-342, ¶¶ 9-12 (we find the trial court did not improperly require appellant to prove self-defense).

**{¶39}** This Court was not alone in this holding. *See State v. Williams*, 3d Dist. Allen No. 1-19-39, 2019-Ohio-5381, ¶12, fn. 1 (holding it is "the version of R.C. 2901.05 in effect at the time the defendant committed the offense" that applies at the defendant's trial); *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶22 ("[t]his court has concluded that shifting the burden of proof on self-defense to the State is not retroactive"); *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶31 ("Ohio courts addressing this issue, including this court, have held that the change made by H.B. 228 'was not retroactive' "), citing *State v. Ward*, 10th Dist. Franklin No. 19AP-266, 2020-Ohio-465, ¶15; *see, e.g., State v. Brown*, 9th Dist. Wayne No. 19AP0004, 2020-Ohio-529,  ¶23 ("[w]e first note that because the offense in this matter occurred prior to March 28, 2019, former R.C. 2901.05[A] applied at the time of Mr. Brown's trial, and it was therefore his burden to prove, by a preponderance of the evidence, that he acted either in self-defense or in defense of others"). *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶103 (rejecting appellant's reliance on *Griffith* in holding he was "not entitled to retroactive application of the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228"); *State v. Fisher*, 8th Dist. No. 108494, 2020-Ohio-670, ¶24, fn. 2 (because the defendant's trial occurred before the effective date of the amendment, the amendments under H.B. 228 "do not apply"); *State of Ohio, Plaintiff-Appellee, v. Mustafa Zafar, Defendant-Appellant.*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶31.

**{¶40}** In *State v. Koch, supra*, the Second District, in analyzing whether R.C. §2901.05 was to be applied retroactively, concluded it was not, finding:

" … H.B. 228 effected a statutory change regarding the manner in which the burden of proof in a self-defense claim is regulated at trial. Simply put, the instant case does not involve a constitutional issue. "Simply because the General Assembly has shifted the burden of proof going forward with evidence of an affirmative defense of self-defense, defense of another, or defense of the accused's residence/vehicle, it does not equate to finding the former statute unconstitutional." *State v. Krug*, 11th Dist. Lake No. 2018-L-056, 2019-Ohio-926, 2019 WL 1241940, ¶ 24.

*State v. Koch*, 2nd Dist. No. 28000, 2019-Ohio-4099, 146 N.E.3d 1238, ¶ 101.

**{¶41}** We are also aware that the Twelfth District recently, in *State v. Gloff*, 12th Dist. Clermont, 2020-Ohio-3143, overruled its prior decisions in *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, 2020 WL 134170, ("appellant was 'not entitled to [the] retroactive application of the burden-shifting changes made by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228.' " *Id.* at ¶ 14, quoting *State v. Koch*, 2d Dist. Montgomery, 2019-Ohio-4099, 146 N.E.3d 1238, ¶ 103) and *State v. Franklin*, 12th Dist. Butler No. CA2019-02-026, 2020-Ohio-532, 2020 WL 774040, ("the General Assembly enacted H.B. 228 to be effective March 28, 2019 and therefore criminal trials held on or after that date must be conducted in accordance with the provisions of that section" and that "this holds true regardless of when the offense(s) may have occurred." *Id.* at ¶ 22-23, 28). The Twelfth District reached its decision upon finding the language of the amended statute refers to application "at the trial of a person." The Court found that the H.B. 228 amendment focuses on when the

trial is held, as opposed to when the offense was committed and held "[t]he H.B. 228 amendment applies prospectively to *trials*," and the "applicable burden of proof for the affirmative defense of self-defense," and not "the conduct giving rise to the offense." (Emphasis sic.). *Id.* at ¶ 23.

**{¶42}** This Court has again reviewed the language of the amended statute and we do not agree with the Twelfth District Court of Appeal's interpretation of the language of the statute. We do not find the "at the trial of a person" language to be a directive regarding the applicability of the statute, rather, it is a reference as to the time and place the affirmative defense evidence must be presented that tends to support that the accused person used the force in self-defense.

**{¶43}** Upon review, we find that Appellant was not entitled to the burden-shifting changes as the amended statute does not apply retroactively to offenses that occurred prior to the statute's effective date. The trial court therefore did not improperly require Appellant to prove self-defense.

**{¶44}** Based on the foregoing, we find Appellant's first assignment of error not well-taken and hereby overrule same.

## II.

**{¶45}** In her second error, Appellant argues the trial court erred in not allowing her to introduce certain impeachment evidence during the cross-examination of a witness. We disagree.

**{¶46}** At trial, Mr. Myers testified that he only spoke with Appellant once while she was in jail. During defense counsel's cross-examination of Myers, counsel sought to introduce telephone calls between Myers and Appellant made during the time she was in

jail. The state objected on the basis that this evidence had not been provided in discovery. The trial court agreed and prohibited Appellant's counsel from using evidence of the telephone calls.

**{¶47}** In addition to exculpatory evidence, evidence that might be used for impeachment purposes, where the credibility of the witness to be impeached may be determinative of guilt or innocence, must also be disclosed. *State v.* Davis (Apr. 18, 1990), Lorain App. No. 88CA004390 at 49, citing *Giglio v. U.S.* (1972), 405 U.S. 150, 154, 31 L.Ed.2d 104, 108. While, the court in *Davis, supra,* Crim.R. 16 applies equally to both the prosecution and the defense:

**{¶48}** Crim.R. 16(A) provides

**(A) Purpose, Scope and Reciprocity.** This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

**{¶49}** Furthermore, in addressing Appellant's assertion that she should have been allowed to use said evidence to impeach the witness, the issue before us is not whether such information should have been disclosed but whether the omission of such evidence produced a reasonable probability that, had the jury known, the jury's verdict would have

been affected. Additionally, in her own testimony, Appellant only referred to one jail telephone call between herself and Mr. Myers. (T. at 513).

{¶50} Based on all of the other evidence presented to the jury, we cannot find that the outcome of the trial would have been different had Appellant been allowed to use said evidence in an attempt to impeach the witness.

{¶51} We find Appellant's second assignment of error not well-taken and hereby overrule same.

### III.

{¶52} In her third assignment of error, Appellant contends the trial court erred in preventing defense counsel from impeaching the victim/witness Mr. Myers with evidence of a prior drug-related crime. We disagree.

{¶53} At trial, Appellant sought to introduce evidence that Mr. Myers had a criminal conviction for trafficking marijuana.

{¶54} The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App.No.1999CA00027.

{¶55} Appellant recites Evid.R. 609, which addresses "impeachment by evidence of conviction of crime." The rule states in pertinent part:

(A) * * * For the purpose of attacking the credibility of a witness:

(1) subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.

(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.

{¶56} In this case, the trial court, found that Mr. Myers had been accepted into an intervention in lieu of conviction (ILC) program and that upon his successful completion of the program there would be no conviction.

{¶57} R.C. §2951.041(A)(1), addressing ILC procedures, states in part as follows:

If an offender is charged with a criminal offense, including but not limited to a violation of section 2913.02, 2913.03, 2913.11, 2913.21, 2913.31, or 2919.21 of the Revised Code, and the court has reason to believe that drug or alcohol usage by the offender was a factor leading to

the criminal offense with which the offender is charged or that, at the time of committing that offense, the offender had a mental illness, was a person with intellectual disability, or was a victim of a violation of section 2905.32 of the Revised Code and that the mental illness, status as a person with intellectual disability, or fact that the offender was a victim of a violation of section 2905.32 of the Revised Code was a factor leading to the offender's criminal behavior, the court may accept, prior to the entry of a guilty plea, the offender's request for intervention in lieu of conviction. * * * ."

**{¶58}** R.C. §2951.041 thus provides that, upon request, certain eligible offenders may be placed under the general control and supervision of the county probation department, or another comparable agency, and if the individual successfully completes an intervention plan, he will have the criminal proceedings against him dismissed. *State v. Ingram,* 8th Dist. Cuyahoga No. 84925, 2005–Ohio–1967, ¶ 9, citing *State v. Dempsey,* 8th Dist. Cuyahoga No. 82154, 2003–Ohio–2579.

**{¶59}** We have recognized that a "conviction" consists of a guilty verdict and the imposition of a sentence or penalty. *See State v. Winstead,* 5th Dist. Fairfield No. 13 CA 87, 2015-Ohio-1579*, State v. Rowser,* 5th Dist. Stark No. 2010CA00065, 2011–Ohio–575, ¶ 15, citing *State v. Whitfield,* 124 Ohio St.3d 319, 2010–Ohio–2, 922 N.E.2d 182, ¶ 12.

**{¶60}** We therefore find no abuse of discretion in the trial court's disallowance of impeachment of Mr. Myers by defense counsel, on the basis that at the time of trial, his ILC participation was not a "conviction" for drug trafficking for the purposes of Evid.R. 609.

**{¶61}** Appellant's third assignment of error is overruled.

**IV.**

**{¶62}** In her fourth assignment of error, Appellant argues the trial court erred in allowing evidence of other acts. We disagree.

**{¶63}** Again, the admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Generally, all relevant evidence is admissible. Evid.R. 402. Abuse of discretion means more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *Sage*, 31 Ohio St.3d 173.

**{¶64}** Evidence of other acts is generally admissible if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character; it is relevant when offered for that purpose; and the danger of unfair prejudice does not substantially outweigh its probative value. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20 and Evid.R. 401, 403, and 404(B). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Under Evid.R. 403(A), '[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *State v. Velez*, 3d Dist. Putnam No. 12-13-10,

2014-Ohio-1788, ¶ 122, quoting *State v. Maag*, 3d Dist. Hancock Nos. 5-03-32 and 5-03-33, 2005-Ohio-3761, ¶ 71. " 'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.' " *Id.*, quoting *State v. Calhoun*, 11th Dist. Ashtabula No. 2010-A-0057, 2012-Ohio-1128, ¶ 82.

**{¶65}** Evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid.R. 404(B); to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶66}** In considering other acts evidence, trial courts should conduct a three-step analysis. The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. Next, the trial court is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B), proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Finally, a trial court is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403, *Williams*, at ¶¶ 19-20.

**{¶67}** "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom*, 40 Ohio St.3d 277, 281-82, 533 N.E.2d 682, (1988). As cautioned

by the Ohio Supreme Court in *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994),

"... we therefore must be careful...to recognize the distinction between evidence which

shows that a defendant is the type of person who might commit a particular crime and

evidence which shows that a defendant is the person who committed a particular crime."

*Id.* at 530, 634 N.E.2d 616. Evidence to prove the 'type' of person the defendant is to

show he acted in conformity therewith is barred by Evid.R. 404(B).

{¶68} Here, the State was permitted to introduce the testimony of Mr. Myers, Mrs.

Randolph and Ms. Picheco as to prior instances of conduct of Appellant such as attacking

Mr. Myers with mace, stealing his dog and threatening Mrs. Randolph, to show that based

on such conduct, it was unreasonable to believe her position that she had permission to

enter Mr. Myers' home.

{¶69} As Appellant's defense strategy in this case was based on her assertions

that she did have permission to enter Mr. Myers' home, we find the trial court's decision

to allow the introduction of said evidence was proper as to "proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶70} Appellant's fourth assignment of error is overruled.

**V.**

{¶71} In her fifth assignment of error, Appellant argues she was denied the

effective assistance of counsel. We disagree.

{¶72} Appellant argues her counsel was ineffective in failing to timely object to the

testimony of "other acts" by the Randolphs and Mr. Picheco.

{¶73} Our standard of review for ineffective assistance claims is set forth in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio

adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶74}** Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, *quoting Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶75}** Initially, we note that Appellant's counsel did, in fact, object to the "other acts" testimony by Ms. Picheco, however, Appellant argues that such objection was not raised earlier enough. With regard to the failure to object concerning the testimony by the Randolphs, Appellant fails to direct this Court to the specific failure.

**{¶76}** Upon review, having found no error in the trial court's allowance of such evidence, we find Appellant's allegations and this assignment of error must fail for lack of evidence that trial counsel's performance was deficient.

**{¶77}** Appellant's fifth assignment of error is overruled.

**VI.**

**{¶78}** In her sixth and final assignment of error, Appellant argues that she was deprived of her constitutional rights to due process and a fair trial by the cumulative effect of the errors in this case.

**{¶79}** Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error. *State v. Garner* (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623, certiorari denied (1996), 517 U.S. 1147, 116 S.Ct. 1444, 134 L.Ed.2d 564.

**{¶80}** Because we have found no instances of error in this case, the doctrine of cumulative error is inapplicable.

**{¶81}**  Appellant's sixth assignment of error is overruled.

**{¶82}**  Accordingly the judgment of the Richland County Court of Common Pleas is affirmed.

By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.

JWW/d 0812