**[Cite as *State v. Wagner*, 2022-Ohio-4051.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-L-101 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the<br>Court of Common Pleas |
| MARK R. WAGNER, JR., | Trial Court No. 2020 CR 001117 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: November 14, 2022
Judgment: Affirmed in part and reversed and remanded in part

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brandon J. Henderson, Justin M. Weatherly*, and *Calvin Freas*, Henderson, Mokhtari & Weatherly Co., LPA, 1231 Superior Avenue, East, Cleveland, OH 44114 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}   Defendant-appellant, Mark R. Wagner, Jr., appeals from his convictions for Felonious Assault, Discharge of a Firearm on or Near Prohibited Premises, Improperly Handling Firearms in a Motor Vehicle, and Falsification in the Lake County Court of Common Pleas.  For the following reasons, we affirm in part and reverse in part  the judgment of the lower court and remand for further proceedings consistent with this opinion.

{¶2} On January 29, 2021, the Lake County Grand Jury issued an Indictment, charging Wagner with Felonious Assault (Count One), a felony of the second degree, in violation of R.C. 2903.11(A)(2); Discharge of a Firearm on or Near Prohibited Premises (Count Two), a felony of the third degree, in violation of R.C. 2923.162(A)(3); Improperly Handling Firearms in a Motor Vehicle (Count Three), a felony of the fourth degree, in violation of R.C. 2923.16(A); and Falsification (Count Four), a misdemeanor of the first degree, in violation of R.C. 2921.13(A)(3). Counts One and Two also had firearm specifications pursuant to R.C. 2941.145 and .146.

{¶3} A jury trial was held on July 20-22, 2021. The following pertinent testimony and evidence were presented:

{¶4} On September 22, 2020, Solomon Ford was driving on I-271 North and encountered another vehicle in front of him, a Chevy Silverado, later determined to have been driven by Wagner. According to Ford's testimony, Wagner was driving aggressively and slamming on his brakes. Ford testified that after the two travelled onto I-90 West, Wagner moved into the right lane while Ford remained in the fast lane. When Ford looked to the right, he observed Wagner with a gun and then saw and heard two gun shots. Ford followed Wagner to obtain his license plate number and gave a statement at the Wickliffe Police Department. Ford allowed police to access his vehicle, which had two bullet holes in it, and officers subsequently swabbed the inside of his vehicle for gunshot residue. At this point in the testimony, defense counsel indicated to the court that he was unaware a swab had been taken of Ford's car. The State indicated a reference to the kit had been included on the index of discovery provided to the defense.

Case No. 2021-L-101

{¶5} Patrolman David Cook of the Wickliffe Police Department spoke with Wagner, who described the shooting, observed two bullet holes in his passenger side and found a bullet inside the vehicle on the rear passenger floorboard. Around the same time, Officer Salvatore Continenza of the Willoughby Hills Police Department spoke with Wagner, who came to the department after the shooting. According to Continenza, Wagner identified that Ford fired at him first but Wagner did "not remember if he [Wagner] fired or not." Continenza turned over the statement to the Wickliffe Police Department as it was determined the incident occurred within their jurisdiction.

{¶6} Lieutenant Manus McCaffery of the Wickliffe Police Department searched Wagner's vehicle, wherein two shell casings were recovered. He observed no signs of a shooting within Ford's vehicle, which he inspected the day after the incident. He swabbed the interior of Ford's vehicle for gunshot residue on July 28. He testified that this was not sent to a laboratory because "there is no laboratory in the State of Ohio that will test them for gunshot residue" and labs would only test gunshot residue found on a person.

{¶7} As to his supplemental report that discussed swabbing Ford's vehicle for gunshot residue, McCaffery testified that he personally gave a copy to the prosecutor for the first time on the day preceding his testimony, the first day of trial. He was unaware of when the prosecutor first received the report but provided a copy because it had been indicated to him they did not have his supplement.

{¶8} Detective Don Dondrea of the Wickliffe Police Department examined Wagner's vehicle and did not observe bullet holes. He swabbed the vehicle for gunshot residue but after speaking with Ohio BCI, he was informed that they would only test residue from hands. He did not discover any evidence that showed Ford shot at Wagner

3

other than Wagner's statement.

{¶9} Wagner testified that Ford tried to merge his vehicle into him while driving on I-271, which resulted in Wagner "brake checking" him. After Ford tailgated him and followed him in traffic, Wagner separated from him and drove in the right lane while Ford remained in the far left lane. Subsequently, Wagner observed Ford holding a gun. Wagner reached for a firearm in his vehicle while crouching down, heard a shot and saw a flash, and then fired his gun twice. He observed no damage to his vehicle and told Continenza that he "wasn't sure if I shot him. But I fired." He testified that he fired the shots in self-defense.

{¶10} The jury found Wagner guilty of all counts as charged in the indictment. Its verdict was memorialized in a July 28, 2021 Judgment Entry.

{¶11} A sentencing hearing was held on August 30, 2021. The court found that Counts Two and Three merged into Count One. It ordered Wagner to serve a minimum prison term of three years and a maximum term of four and a half years on Count One, with a term of three years for the first firearm specification and five years on the second, all to be served consecutively. Wagner was ordered to serve a concurrent term of 180 days for Count Four.

{¶12} Wagner timely appeals and raises the following assignments of error:

{¶13} "[1.] The trial court committed prejudicial error when it instructed the jury to consider whether Mr. Wagner had a duty to retreat as a factor of his self-defense claim because the plain language of the statute in effect at the time of trial and jury deliberations prohibited such an instruction: 'the trier of fact *shall not consider the possibility of retreat*' in determining whether the self-defender 'reasonably believed that the force was

4

necessary . . .' R.C. 2901.09(C).

{¶14} "[2.] The Defendant was reversibly prejudiced when crucial evidence that was directly related to the cross-examination of the State's primary witness—and whose cross-examination had already been completed—was not given to his defense until one day into the three-day trial even though the Defendant had triggered Crim.R. 16 by demanding discovery months previously."

{¶15} In his first assignment of error, Wagner argues that, after the offense occurred but prior to trial, a "Stand Your Ground" law came into effect, removing the duty to retreat for the purposes of self-defense and, thus, the trial court erred by denying his request not to give a duty to retreat instruction.

{¶16} Generally, "[a]n appellate court reviews a trial court's decision to give a particular set of jury instructions under an abuse of discretion standard." (Citation omitted.) *State v. Settle*, 2017-Ohio-703, 86 N.E.3d 35, ¶ 37 (11th Dist.). However, "[w]hether the jury instructions correctly state the law is a question that is reviewed de novo." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135.

{¶17} R.C. 2901.09 was amended effective April 6, 2021, and provides the following:

> (B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

5

(C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

The version of the statute in effect prior to that date, known as the Castle Doctrine, provided that a person lawfully in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of a residence and a person in their vehicle had no duty to retreat before using force in self-defense or defense of another. Section (C) was not part of the prior version.

{¶18} "The Supreme Court of Ohio has articulated a two-part test" for "determining whether a statute is impermissibly retroactive under Section 28, Article II." *State v. McEndree*, 2020-Ohio-4526, 159 N.E.3d 311, ¶ 43 (11th Dist.). "Because R.C. 1.48 establishes a presumption that statutes operate prospectively only, '[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply.'" (Citation omitted.) *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 10. "If there is no 'clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment.' * * * If we can find, however, a 'clearly expressed legislative intent' that a statute apply retroactively, we proceed to the second step, which entails an analysis of whether the challenged statute is substantive or remedial." (Citations omitted.) *Id.* If the law is substantive, it cannot be applied retroactively. *Bielat v. Bielat*, 87 Ohio St.3d 28, 721 N.E.2d 28 (2000).

6

**{¶19}** It has been held, however, that "if a statute is amended and becomes effective while the defendant's case is pending in the trial court, then its applicability to the defendant's case is guided by R.C. 1.58." *State v. Stiltner*, 4th Dist. Scioto No. 19CA3882, 2021-Ohio-959, ¶ 54, *vacated, State v. Stiltner*, __ Ohio St.3d __, 2022-Ohio-3589, __ N.E.3d __, ¶ 1, citing *State v. Kaplowitz*, 100 Ohio St.3d 205, 2003-Ohio-5602, 797 N.E.2d 977, ¶ 8 ("R.C. 1.58(B) identifies which law to apply when a statute is amended after the commission of a crime but before sentence is imposed"). R.C. 1.58 provides that an amendment of a statute does not, inter alia, affect any right accrued under the statute or affect a violation thereof prior to the amendment but that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by * * * amendment of a statute" such penalty or punishment "shall be imposed according to the statute as amended." R.C. 1.58(A) and (B).

**{¶20}** The State argues that this law cannot be applied retroactively because it is substantive in nature. Wagner argues that it is unnecessary to conduct a retroactivity analysis because the statute was in effect at the time his trial began and, thus, the application relating to the jury instruction was prospective.

**{¶21}** We initially observe that there is limited authority on the prospective or retroactive application of the specific statute at issue in the present case. Two courts have addressed this issue in relation to R.C. 2901.09. In *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, the court found that retroactive application of the statute would be unconstitutional since the change in law relating to the duty to retreat is substantive. In *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, the Eighth District found that former R.C. 2901.09 applied during the trial since substantive

7

provisions of the former law apply to pending prosecutions under R.C. 1.58. In support of its conclusion, it cited *Stiltner*, 2021-Ohio-959. In *Stiltner*, the appellate court held that the trial court did not err in instructing the jury on a former version of the self-defense law, R.C. 2901.05, because the new version of the statute became effective while the defendant's case was pending and the legislature did not indicate it intended to apply the statute retroactively. It rejected the argument that inclusion of the words "at trial" in the statute was an express intent to apply the statute to pending cases. *Id.* at ¶ 56. *Degahson* also cites *Stiltner* for the proposition that substantive provisions of the former law should not apply to pending prosecutions. *Degahson* at ¶ 22.

{¶22} The issue addressed in *Stiltner*, whether the prior version of the self-defense statute applied at trial when the offense had been committed prior to the amendment of the statute, is instructive in this case. In both instances, relating to self-defense and the issue of duty to retreat, the courts are asked to consider how to instruct a jury at trial for an offense that was committed under the former version of this statute. Courts in this state have been split on the resolution of this matter as to the self-defense statute. In support of his position, Wagner cites to *State v. Gloff*, 2020-Ohio-3143, 155 N.E.3d 42 (12th Dist.), which addresses the foregoing. In *Gloff*, while the trial was taking place, the amended self-defense statute went into effect, which provides: "If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove * * * that the accused person did not use force in self-defense." *Id.* at ¶ 3, citing R.C. 2901.05(B)(1). The lower court's determination that this statute applied only to offenses committed after its effective date

8

was rejected. The appellate court determined that a retroactivity analysis was not required since the amended statute applied prospectively to trials and "focuses on when the trial is held, as opposed to when the offense was committed." *Id.* at ¶ 22. Some other appellate districts reached similar conclusions. *State v. Smith*, 6th Dist. Wood No. WD-19-070, 2020-Ohio-5119, ¶ 32 (where defendant's conduct occurred before amendment and trial occurred after, the amended statute applied at trial and the jury should have been instructed as to the new burden of proof); *State v. Pitts*, 2020-Ohio-5494, 163 N.E.3d 1169, ¶ 25 (1st Dist.). In contrast, other districts held that where the offense was committed before the effective date of the amendment, an instruction under the amended version should not be given at trial. *Stiltner*, 2021-Ohio-959, ¶ 55. *See also State v. Williams*, 3d Dist. Allen No. 1-19-39, 2019-Ohio-5381, ¶ 12, fn. 1 ("[w]e apply the version of R.C. 2901.05 in effect at the time the defendant committed the offense"); *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, ¶ 26 (2d Dist.), *vacated*, *State v. Irvin*, __ Ohio St.3d __, 2022-Ohio-3587, __ N.E.3d __, ¶ 1. This court reached the same conclusion and determined that, "inasmuch as the amended self-defense statute creates a new burden of proof on the state, we find that it is *substantive* and cannot be applied retroactively." *McEndree*, 2020-Ohio-4526, at ¶ 44.

{¶23} The Ohio Supreme Court recently resolved the foregoing conflict in *State v. Brooks*, ___ Ohio St.3d ___, 2022-Ohio-2478, ___ N.E.3d ___. The court evaluated the issue of whether "legislation that shifts the burden of proof on self-defense to the prosecution * * * appl[ies] to all subsequent trials even when the alleged offenses occurred prior to the effective date of the act." *Id.* at ¶ 1. The Supreme Court held that amended R.C. 2901.05 applies "to all trials conducted on or after its effective date" regardless of

9

when the underlying criminal conduct occurred. *Id.* at ¶ 2. In its analysis, the court found this was not an ex post facto law since it did not create a new crime or increase the burden or punishment for a past crime. *Id.* at ¶ 13.

{¶24} The court also held that, as amended, the statute did not apply retroactively but prospectively to all trials occurring after its effective date, emphasizing the right to self-defense was stated in the present tense ("[a] person *is* allowed to act in self-defense" and "*at the trial* of a person * * * the prosecution must prove" self-defense). *Id.* at ¶ 14. It concluded that since "[t]he amendment here applies prospectively and, because it does not increase the burden on a criminal defendant, there is no danger of its violating Ohio's Retroactivity Clause or the United States Constitution's Ex Post Facto Clause." *Id.* at ¶ 19.

{¶25} Similar to the argument presented by Wagner, the Supreme Court in *Brooks* did not perform an analysis as to whether the statute was properly applied retroactively, including whether the change is substantive, because it found that, as written, it has a prospective application. *See McEndree* at ¶ 43 ("if we can find, however, a 'clearly expressed legislative intent' that a statute apply retroactively, we proceed to the second step, which entails an analysis of whether the challenged statute is substantive or remedial"). In relation to self-defense, R.C. 2901.05(B)(1) states "at the trial of a person * * * the prosecution must prove" self-defense. In other words, the amended statute should apply since the language related to the date of the trial rather than the date the offense was committed. Likewise, in the present matter, the duty to retreat statute, R.C. 2901.09(C) states, in part: "A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of

10

another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." It also has a prospective application and sets forth how the jury should be instructed as of the date of the trial. Also similar to *Brooks*, there are no concerns about the application of the amended statute negatively impacting the defendant since it does not deprive him of any rights or subject him to a harsher penalty.

{¶26} This sentiment was echoed by the dissenting opinion in *Hurt*, 2022-Ohio-2039. The opinion addressed the similarities between R.C. 2109.05 and .09, citing *Gloff* in support, which the Supreme Court upheld as "correctly decided" in *Brooks*. *Hurt* at ¶ 99; *Brooks* at ¶ 19. As the dissenting opinion explained, "*Gloff* held that the 2019 amendment to R.C. 2109.05 applies prospectively to trials held after the effective date of the statute per the statutory language that prescribes the actions 'at the trial.' * * * Likewise, the plain language of R.C. 2105.09(C) provides that '*a trier of fact* [at trial] shall not consider the possibility of retreat as a factor.'" *Hurt* at ¶ 99 (Mays, P.J., concurring in part and dissenting in part). We agree with this conclusion and do not find the majority opinion in *Hurt* to be persuasive given its reliance on *Stiltner* which is no longer valid law following the holding in *Brooks*. As to *Degahson*, we observe that, while it recognized the *Brooks* opinion, it did not address its applicability in relation to this matter. It also utilized *Stiltner*'s interpretation that, under R.C. 1.58(B), the court could not apply the self-defense law as amended due to its substantive nature, which is inconsistent with *Brooks*. *Degahson* also fails to consider the fact that the provision requiring a jury instruction appears to have prospective application on its face, as discussed above. As such, we decline to apply its holding.

11

Case No. 2021-L-101

{¶27} We recognize the State's argument that this case differs slightly from the self-defense issue addressed in *Brooks* and addresses a more substantive matter as it relates to the right to defend oneself without retreating rather than a change in burden for a self-defense instruction. However, given the similarities in the prospective application and the fact that the duty to retreat statute proscribes the actions to be taken at trial, we find the *Brooks* analysis to be applicable in the present matter.

{¶28} Since we conclude the jury instruction should have been given under the amended version of the statute, we remand for a retrial on the counts relating to the shooting of the vehicle: Felonious Assault (Count One), Discharge of a Firearm on or Near Prohibited Premises (Count Two), and Improperly Handling Firearms in a Motor Vehicle (Count Three). The Falsification conviction, relating to statements Wagner made to police about the incident that were unrelated to the duty to retreat, was not impacted by the jury instruction issue and is affirmed.

{¶29} The first assignment of error is with merit.

{¶30} In his second assignment of error, Wagner argues that a violation of Crim.R. 16 occurred when the prosecution failed to disclose a report from a detective showing that he performed a gunshot residue swab of Ford's vehicle, which caused prejudice and warrants a new trial. Given the disposition of the first assignment of error, and since this error does not relate to or impact the Falsification conviction, we decline to address this issue as it is moot.

{¶31} The second assignment of error is moot.

{¶32} For the foregoing reasons, Wagner's conviction for Falsification is affirmed and his convictions for Felonious Assault, Discharge of a Firearm on or Near Prohibited

12

Premises, and Improperly Handling Firearms in a Motor Vehicle are reversed and this matter is remanded for a new trial on those charges. Costs to be taxed against appellee.

THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

13